# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| SCOTT & STRINGFELLOW, LLC, )<br>   d/b/a BB&T Capital Markets, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>AIG COMMERCIAL EQUIPMENT )<br>FINANCE, INC., )<br>)<br>      Defendant. ) | Civil Action No. 3:10CV825-HEH |

## <u>MEMORANDUM OPINION</u>
### (Defendant's Motion for Judgment on the Pleadings)

This case is a contractual dispute over whether the Plaintiff is entitled to payment for services it rendered for the Defendant. It is presently before the Court on the Defendant's Motion for Judgment on the Pleadings filed pursuant to Fed. R. Civ. P. 12(c). The immediate issue for the Court's resolution is whether the Plaintiff has sufficiently pled claims for breach of contract, quantum meruit, unjust enrichment, and violations of §§ 18.2-499 and 500 of the Code of Virginia.

The parties have submitted detailed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process. For the reasons discussed herein, Defendant's motion will be granted in part and denied in part.

I.

In September of 2008, Plaintiff Scott & Stringfellow, LLC, ("Scott & Stringfellow") and Defendant AIG Commercial Equipment Finance, Inc., ("AIGCEF") engaged in discussions regarding the liquidation of municipal assets owned by AIGCEF. AIGCEF sought the assistance of Scott & Stringfellow in raising cash by disposing of the municipal assets. On April 23, 2009, the parties entered into a contract in which Scott & Stringfellow agreed to "act as the exclusive structurer and placement agent in connection with the structuring and securitization of all or a portion ... of the ... assets." (Am. Compl. Ex. A, at 1, ECF No. 17-1.) The contract clearly provides that Scott & Stringfellow is entitled to a fee amounting to one percent of the aggregate principal amount of the municipal assets securitized in such a transaction. The contract does not further define the term "structuring" nor does it explicitly provide for a fee if the assets are disposed of by means other than securitization. These two issues form the basis of the dispute between the parties.

During 2009 and 2010, the parties repeatedly extended the contract to enable Scott & Stringfellow to complete a marketable securitization of the asset pool. However, in June of 2010, it became apparent to the parties that securitizing the assets would not accomplish AIGCEF's stated goal of obtaining the best possible return on the assets. As a result, Scott & Stringfellow explored alternative options, including a possible direct sale of the assets.

At a presentation to AIGCEF officers on October 20, 2010, Scott & Stringfellow outlined several options to dispose of the assets, including a direct sale. Following this presentation, AIGCEF decided to sell the portfolio of municipal assets rather than securitize them. On October 28, 2010, the assets were sold without securitization to a third party at a price of more than $400,000,000.

After the sale was completed, AIGCEF declined to pay Scott & Stringfellow the fee specified under the terms of the contract. As a result, Scott & Stringfellow filed this action against AIGCEF alleging breach of contract, quantum meruit, unjust enrichment, and a violation of §§ 18.2-499 and 500 of the Code of Virginia, which prohibits combinations to injure others in their business or trade. Scott & Stringfellow seeks a fee of three percent of the value of the assets sold, which it represents to be the usual fee in the industry for such a transaction, as well as other money damages.

AIGCEF subsequently filed a Motion for Judgment on the Pleadings, claiming that all four counts of the amended complaint should be dismissed for failure to state a claim.

## II.

The standard for reviewing a motion for judgment on the pleadings under Rule 12(c) utilizes the same standard as a motion made pursuant to Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; ... it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of*

*N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), amplified this standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. While it does not require "detailed factual allegations," *Twombly* held that Rule 8 of the Federal Rules of Civil Procedure does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555, 127 S. Ct. at 1964-65. Thus, a complaint containing facts that are merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557, 127 S. Ct. at 1966. Rather, a complaint achieves facial plausibility when it contains sufficient allegations supporting the reasonable inference that the facts alleged support an actionable claim. *Id.* At 556, 127 S. Ct. at 1965; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

This analysis is context specific and requires the "reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The *Giacomelli* Court also stressed that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1955). Additionally, in considering a Rule 12(c) motion, the Court assumes the facts alleged in the Complaint are true and draws all reasonable factual inferences in the nonmovant's favor. *Edwards*, 178 F.3d at 243.

4

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the [12(c)] motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (citations omitted). However, there are exceptions to this rule. "Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn*, 164 F.App'x at 396 (citations omitted); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("[A court] may consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

## III.

Turning first to the breach of contract claim, both parties agree that their choice of law provision encompasses this claim and that the written contract is therefore governed by New York law. A claim for breach of contract under New York law must allege: the existence of an agreement, adequate performance of the agreement by the plaintiff, a breach of the agreement by the defendant, and damages. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). The parties do not dispute the existence of a valid contract that satisfies the above-listed elements. Rather, at issue in this motion is whether the fee agreed upon in the contract is payable on a direct sale of the assets.

One of the core principles of contract interpretation under New York law requires courts to construe agreements in accord with the parties' intent. *Id.* The contract itself is usually the best evidence of the parties' intent, and the plain meaning of the terms in the contract must be enforced if it is clear, complete, and unambiguous on its face. *Eternity Global Master Fund*, 375 F.3d at 177-78. However, "a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Id.* at 178. Under New York law, "[c]ontract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (quotations and citations omitted). The task of determining whether contractual terms are clear or ambiguous is a question of law to be decided by the court. *Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994).

Resolution of AIGCEF's motion as to count one therefore necessarily turns on a determination of whether the term "structuring," as used in the contract, is ambiguous.[1] AIGCEF contends that structuring is a part of the securitization process, and that a direct sale does not implicate structuring services. Conversely, Scott & Stringfellow maintains that the term is ambiguous, necessitating a denial of the motion as to count one. At this juncture, Scott & Stringfellow holds the stronger hand on the issue of whether the term "structuring" is ambiguous. The term is not defined anywhere in the contract, and a

---

[1] Scott & Stringfellow concedes that the term "securitization" is unambiguous and is defined as pooling the assets, rating the quality of the assets, and issuing new securities backed by the assets. (Pl.'s Mem. Opp'n Def's Mot. J. Pleadings 4-5, ECF No. 24.) "Securitization" thus does not encompass a direct sale of the assets.

review of the context in which it is used yields multiple reasonable interpretations of its meaning.[2] One reasonable reading of the contract leads to the conclusion that it required Scott & Stringfellow to provide structuring services in furtherance of *any* type of transaction involving the assets that accomplished the stated goal of raising cash for AIGCEF.

Simply put, the term "structuring" cannot reasonably be construed to have only one meaning in the context of the contract. At this early stage of the case, the Court therefore finds the term to be ambiguous, and thus will deny AIGCEF's motion with respect to count one. *See Eternity Global Master Fund*, 375 F.3d at 178 (holding that a claim based on an ambiguous contract term is not dismissible on the pleadings).

Next, AIGCEF seeks dismissal of counts two and three, which respectively allege claims for quantum meruit and unjust enrichment. AIGCEF contends that the existence of a valid written contract precludes extra-contractual recovery based on the same subject matter governed by the contract. Additionally, AIGCEF claims that New York's statute of frauds, applicable to these claims through the contract's choice of law provision, requires such contracts to be in writing. On the other hand, Scott & Stringfellow argues that the prohibition on extra-contractual recovery only applies when there is no dispute as to the applicability of the written contract. Until the viability of the contract claim is resolved, Scott & Stringfellow maintains that it should be permitted to proceed with its quasi-contract claims as alternative causes of action. Scott & Stringfellow further asserts

---

[2] A dictionary definition, as Scott & Stringfellow points out, lends little assistance in this endeavor, as it merely defines the term as "the manner in which the elements of anything are organized or interrelated." (Pl.'s Mem. Opp'n Def's Mot. J. Pleadings 5.)

7

that these claims are outside the scope of the New York choice of law provision contained in the contract, and thus either Texas, Virginia, or North Carolina substantive law applies to counts two and three. Under the law of any of these states, Scott & Stringfellow contends that its quasi-contract claims are not barred by the statute of frauds.

The choice of law provision provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any contrary result otherwise required by applicable conflict or choice of law rules." (Am. Compl. Ex. A, at 5, ECF No. 17-1.) As Scott & Stringfellow correctly notes, "the scope of the choice of law provision must be determined by the law of the state chosen by the parties in the contract," *Bunker Holdings, Ltd. v. Green Pac. A/S*, 346 F. App'x. 969, 973 (4th Cir. 2009), which is New York in this case. Although there appears to be some disagreement among New York courts, substantial authority exists for the proposition that extra-contractual claims, including quasi-contractual claims, fall outside the scope of contractual choice of law provisions. *See, e.g., Hettinger v. Keinman*, 733 F. Supp.2d 421, 444 (S.D.N.Y. 2010) (holding that "extra-contractual claims are outside the scope of contractual choice-of-law provisions"); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05CV6540(PKL) 2009 U.S. Dist. LEXIS 30386, at *33 (S.D.N.Y. April 7, 2009) ("[E]xtra-contractual claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract."); *see also Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) (holding that extra-contractual tort claims are not governed

by contractual choice of law provisions). Based on these cases, this Court finds that the quasi-contractual claims are outside the scope of the choice of law provision contained in the contract.

Absent a controlling choice of law provision, this Court, sitting in diversity, applies Virginia's choice of law principles to determine the substantive law that governs counts two and three. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941). Although little direct guidance exists as to which choice of law principles govern quasi-contractual claims in Virginia, Scott & Stringfellow notes that for the purposes of determining the forum state's choice of law principles, courts within the Fourth Circuit generally treat quasi-contractual claims as arising out of contract. *See, e.g., Neighbors Law Firm, P.C. v. Highland Capital Mgmt., L.P.*, No. 5:09-CV-352-F, 2010 U.S. Dist. LEXIS 105901, at *22-23 (E.D.N.C. Aug. 16, 2010); *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp.*, 299 F. Supp.2d 505, 521 n.16 (D. Md. 2004). This Court agrees that contractual choice of law principles should govern the quasi-contractual claims. Thus, counts two and three are governed by the law of the place where the contract was made. *See Lexie v. State Farm Mut. Auto Ins. Co.*, 251 Va. 390, 394, 469 S.E.2d 61, 63 (1996).

The contract at issue was executed in Texas, and was the result of negotiations and contacts occurring in the parties' Texas, North Carolina, and Virginia offices. However, there is no conflict between the applicable laws of these three states. Indeed, under Texas, North Carolina, and Virginia law, the statute of frauds is not a bar to an action for

unjust enrichment or quantum meruit. *See, e.g., In re Palms at Water's Edge, L.P.*, 334 B.R. 853, 862 (Bankr. W.D. Tex. 2005); *Rice v. Vitalink Pharm. Servs.*, 124 F. Supp.2d 343, 351 (W.D.N.C. 2000); *Ricks v. Sumler*, 179 Va. 571, 576, 19 S.E.2d 889, 891 (1942). AIGCEF's motion as to counts two and three will therefore be denied.

Lastly, AIGCEF challenges count four, which alleges a wrongful combination to injure Scott & Stringfellow's business interests, in violation of §§ 18.2-499 and 500 of the Code of Virginia.. AIGCEF asserts that count four must be dismissed because the claim is premised upon an alleged conspiracy between AIG, Incorporated and AIGCEF, a wholly owned subsidiary of AIG. In opposition, Scott & Stringfellow argues that neither the Fourth Circuit nor any court in the Eastern District of Virginia has adopted such an argument, which is limited in application to antitrust cases. This Court disagrees.

In order to maintain a claim under §§ 18.2-499 and 500 the complaint must allege "a combination of two or more persons for the purpose of willfully and maliciously injuring the plaintiff in [its] business; and resulting damage to the plaintiff." *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp.2d 610, 618 (E.D. Va. 2009) (citations omitted). However, the U.S. Supreme Court in *Copperweld Corp. v. Independence Tube Corp.* held that a corporation is legally incapable of conspiring with its wholly owned subsidiary for purposes of violating the Sherman Act. 467 U.S. 752, 769, 104 S. Ct. 2731, 2740-41 (1984). Many other courts have reached the same or similar conclusions. *See, e.g., Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 223 (4th Cir. 2004) (holding that a parent corporation and its wholly owned subsidiary cannot conspire to violate the

unjust enrichment or quantum meruit. *See, e.g., In re Palms at Water's Edge, L.P.*, 334 B.R. 853, 862 (Bankr. W.D. Tex. 2005); *Rice v. Vitalink Pharm. Servs.*, 124 F. Supp.2d 343, 351 (W.D.N.C. 2000); *Ricks v. Sumler*, 179 Va. 571, 576, 19 S.E.2d 889, 891 (1942). AIGCEF's motion as to counts two and three will therefore be denied.

Lastly, AIGCEF challenges count four, which alleges a wrongful combination to injure Scott & Stringfellow's business interests, in violation of §§ 18.2-499 and 500 of the Code of Virginia.. AIGCEF asserts that count four must be dismissed because the claim is premised upon an alleged conspiracy between AIG, Incorporated and AIGCEF, a wholly owned subsidiary of AIG. In opposition, Scott & Stringfellow argues that neither the Fourth Circuit nor any court in the Eastern District of Virginia has adopted such an argument, which is limited in application to antitrust cases. This Court disagrees.

In order to maintain a claim under §§ 18.2-499 and 500 the complaint must allege "a combination of two or more persons for the purpose of willfully and maliciously injuring the plaintiff in [its] business; and resulting damage to the plaintiff." *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp.2d 610, 618 (E.D. Va. 2009) (citations omitted). However, the U.S. Supreme Court in *Copperweld Corp. v. Independence Tube Corp.* held that a corporation is legally incapable of conspiring with its wholly owned subsidiary for purposes of violating the Sherman Act. 467 U.S. 752, 769, 104 S. Ct. 2731, 2740-41 (1984). Many other courts have reached the same or similar conclusions. *See, e.g., Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 223 (4th Cir. 2004) (holding that a parent corporation and its wholly owned subsidiary cannot conspire to violate the

Sherman Act). More importantly, other district courts in Virginia have extended this principle beyond the antitrust context and specifically applied it in dismissing claims under §§ 18.2-499 and 500 of the Code of Virginia. *See Field v. GMAC LLC*, 660 F. Supp.2d 679, 689 (E.D. Va. 2008) (holding that a corporation and its wholly owned subsidiary cannot legally conspire under §§ 18.2-499 and 500); *Saliba v. Exxon Corp.*, 865 F. Supp. 306, 313 (W.D. Va. 1994) (dismissing claims brought under §§ 18.2-499 and 500 because a parent and wholly owned subsidiary were legally incapable of engaging in a conspiracy); *Ray Dobbins Lincoln-Mercury, Inc. v. Ford Motor Co.*, 604 F. Supp. 203, 205 (W.D. Va. 1984) (same).

Without addressing the *Field*, *Saliba*, and *Ray Dobbins* cases, which are directly on point and contrary to its position, Scott & Stringfellow maintains that *Copperweld* is inapplicable because it is limited to the antitrust context. This Court disagrees with Scott & Stringfellow's contention. In *Copperweld*, the Court held that "[a] parent and its wholly owned subsidiary have a complete unity of interest.... their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." *Copperweld*, 467 U.S. at 771, 104 S. Ct. at 2741. Applying this unity of interest theory, the Court found that a parent and subsidiary could not legally conspire because "the ultimate interests of the subsidiary and the parent are identical, so the parent and the subsidiary must be viewed as a single economic unit." *Id.* at 772, 104 S. Ct. at 2742 n.18. This logic applies with equal force to §§ 18.2-499 and 500. The Virginia statute aims to prevent economic harm to another individual or entity's business interests.

11

Consequently, a parent and wholly owned subsidiary, acting with identical ultimate interests and thus as a single economic unit, cannot conspire with each other to harm a third party's business interests.

Furthermore, as Judge Turk held in *Ray Dobbins Lincoln-Mercury, Inc. v. Ford Motor Company*, a case involving a claim under §§ 18.2-499 and 500, "[t]he Supreme Court's guidance being uncontradicted by any authority regarding the particular Virginia statute, the *Copperweld* logic must control." 604 F. Supp. 203, 205 (W.D. Va. 1984). The Supreme Court recently reaffirmed this guidance in *American Needle, Inc. v. NFL*, in which it held that "a parent corporation and its wholly owned subsidiary are incapable of conspiring with each other for purposes of § 1 of the Sherman Act." 130 S. Ct. 2201, 2211 (2010). In light of this most recent decision on the issue from the Supreme Court, and in the absence of any other Supreme Court or Fourth Circuit holding to the contrary, this Court agrees with the other federal district courts in Virginia that have held a parent corporation to be unable to legally conspire with its wholly owned subsidiary for the purposes of violating §§ 18.2-499 and 500. AIG, Incorporated thus cannot legally conspire with AIGCEF, its wholly owned subsidiary[3]. AIGCEF's motion will be granted in this regard and count four will be dismissed.

---

[3] According to AIG, Incorporated's 2009 Form 10-K, publicly filed with the Securities and Exchange Commission, AIGCEF is a wholly owned subsidiary of AIG, Incorporated. American International Group, Inc., Annual Report (Form 10-K) (Ex. 21) (Feb. 26, 2010). A court may take judicial notice of SEC filings when ruling on a motion to dismiss. *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390 n.10 (4th Cir. 2005). The Court therefore takes judicial notice of the fact that AIGCEF is a wholly owned subsidiary of AIG, Incorporated.

IV.

For these reasons, AIGCEF's Motion for Judgment on the Pleadings will be denied as to counts one, two, and three, and granted as to count four. An appropriate Order will accompany this Memorandum Opinion.

／s／
Henry E. Hudson
United States District Judge

Date: April 8, 2011
Richmond, VA